USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States,

—v—

John William Cook, Jr.

    Defendant.

13-cr-777 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

The Court has received the attached letter from Mr. Cook in reply to the Government's Opposition to his Motion for Compassionate Release.

The Clerk of Court is respectfully directed to mail this Order to the Defendant.

SO ORDERED.

Dated: December 7, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

DATE: 11/25/2020

Dear Judge Nathan:

I respectfully submit this letter in response to the government's opposition letter ("Gov Opp") filed on October 14 2020.

"Mr. Cook's Obesity Condition and Housing Condition Warrants Compassionate Release"

The government argues that Mr.Cook's health and housing conditions do not warrant granting his compassionate release motion. See Gov't Opp.The government acknowledges as it must that Mr. Cook obesity Is a condition that establish an extraordinary and compelling reason under section 3582 (c) in light of the covid 19 pandemic. However the government minimizes the seriousness of the risk covid-19 poses to Mr. Cook due to his obesity, stating that aside from having a BMI of 34 Mr. Cook appears to otherwise be in good health although Mr. Cook may appear to be in good health to a lay observer That does not diminish the immediate threat of COVID-19 and the severe or fatal consequences that he could suffer because of his obesity. Obesity has been and continues to be a very serious health condition that places those who suffer from it at increased risk of severe illness from COVID-19. Mr. cooks compassionate release motion cites medical studies and irrefutable scientific proof of the increase risk of COVID-19 due to obesity, obesity is a significant crucial medical commodity that puts obese individuals at a high risk of severe or fatal illness from COVID-19 infection.

The government further argues that the conditions of confinement at FCI Fort Dix do not weigh in favor of Mr. Cook's release because cases have been limited at the facility. however in recent months the incidents of covid- 19 at FCI Fort Dix the facility where Mr. Cook his house has increased at an alarming rate as of September 30th 2020 there were zero positive cases among inmates or staff at Fort Dix and that staff had never had an inmate test positive in the low security part of the facility where the defendant is house, as of October 28th 2020 there were 58 positive cases in the low security prison where Mr. Cook is house as of November 15th 2020 233 inmates and 15 staff members at FCI Fort Dix have tested positive for COVID-19 and as of November 25th 2020 the date of this filing 255 inmates and 20 staff members at FCI Fort Dix have tested positive for Covid-19 placing FCI Fort Dix number one for current cases in the entire BOP.

The government's endorsement of the phases of the BOP's COVID-19 action plan is not persuasive as evidence of the BOP's success and their efforts to control the spread of COVID-19 across their facilities. While it may be encouraging that the BOP seems to have a detailed response to COVID-19 on paper, The reality is that this plan is not effective yet the government continues to argue with confidence that these efforts are working.

Since Mr. Cook's filing a compassionate release motion was granted in the eastern district of Pennsylvania the jurisdiction where Fort Dix is located the defendant served was obese. He served approximately six years on a 15 year term. The government argument was essentially the same as it is in the instant case that Fort Dix currently has no active cases and there has not been a spike in cases so the covid-19 situation at the facility is presumably under control the court was not persuaded and the bunk the BOP protocols

However, the large population at Fort Dix, along with the lack of testing at the facility, may fail to accurately portray the crisis at the prison supposedly, the government argues, because Fort Dix has not seen a spike in confirmed cases it can be assumed that the preventive measures at the prison have been effective Perhaps there are relatively few cases of the virus at FCI Fort Dix but the court does not subscribe to the government's line of thinking. It suggests that ignorance is the best policy Fort Dix only needs to be concerned when test confirmed cases increase but need not test widely. That strikes the court as a risky deal with it only if forced to strategy. A successful strategy for dealing with the virus imprisons it's to prevent the deadly scorch from infecting individuals and one cannot know the full extent of the problem if most of the individuals at FCI Fort Dix remain untested See: united states v Sjohn Brown, 2020 wl5801492, at *2, (E.D.pa. sept. 30, 2020).

Moreover district courts in the Southern District have help similar ideals as noted by District Judge Furman "the best perhaps the only way to mitigate the damage and reduced the death toll of inmates from covid19 is to decrease the jail and prison population united states v Nikanga no. 18 cr 713 (JMF) 2020 U.S dist. Lexis 56188 2020 wl 1529535 at *1 (SDNY mar.31 2020).Congress has expressed a similar desire for courts to use all available powers and authority to reduce the number of federal prisoners in prison See: H. comm on judiciary, letter on DOJ's handling of the novel coronavirus ecf no. 660-4 at 3 (mar 19 2020)

Mr. Cook does not fault the government for relying on information provided to it there is unable to verify  Mr. Cook does however urge the court to consider the complete absence of reliable information provided by the BOP after the number of covid cases at FCI Fort Dix as well as the government continue willingness to place unconditional confidence in the BOP preventive efforts

the court took this into account and Brown noting in fact that the court is somewhat skeptical of the government's confidence in the BOP containment efforts. The BOP did not Institute a policy regarding staff to wear face mask until August 27th 2020 and even that guidance contemplates religious exceptions medical exceptions an outright refusal to comply with the mass mandate in light of the history our confirmed cases of COVID-19 at FCI Fort Dix and the BOP protocols which do not include mass testing of image or any testing of staff, the court finds there is more than a mere speculative risk of infection at Fort Dix

Mr. Cook submits that pursuant to the Second Circuit decision and United States v. Brooker, 2020 WL 57 39 712 Second Circuit September 25th 2020 this court can consider the unreliability

of the BOP purported statistics and the unreliability of the government's argument that the risk to Mr. Cook has been lessoned bye the BOP as another reason to grant his application

Section 3553(a) factors

On April 27th 2014 the jury convicted Mr. Cook on counts one and three of the indictment in particular with respect to count 1 the jury convicted Mr. Cook of the lesser included offense of conspiring to distribute 500 grams or more of cocaine while also convicting Mr. Cook of possessing a firearm in connection with that drug offense the jury acquitted Mr. Cook of the offense charged in count 2.

Although Mr. Cook did not address the 3553 factors at length, this Court is well acquainted with the facts of the case namely Mr. Cook was acquitted of all alleged violent charges at trial and thus was convicted of two non-violent offense after a jury trial of his peers returned their verdict Moreover Mr. Cook does not dispute that he has a lengthy criminal history however this Court as well as other District Courts have GRANTED compassionate release to defendants similarly situated as Mr. Cook.

This court and many other courts in this circuit have granted compassionate release to defendants convicted of offenses involving firearms United States v. Arango no. 15 cr 104 (JMF) 2020 U.S Dist lexis 113059 *3-4 (SDNY June 26, 2020) (granting compassionate release to a defendant convicted of narcotics and firearm in furtherance of drug trafficking offenses, recognizing that while the defendant's "conduct over the last four decades had been quite bad and that he had been a very significant figure in the drug trafficking trade", the defendant was also "genuinely remorseful and had made an effort to change his path in life"

U.S. v. Phillips no. 94 cr. 631(SHS) 2020 U.S.dist lexis 117108 * 10 (SDNY June 30, 2020) (granting compassionate release to a defendant convicted of violent racketeering and firearms offenses
Based on holding "that the increased risk of severe covid-19 to [defendant] and his complete and thorough rehabilitation provide "extraordinary and compelling reasons for a sentence reduction") U.S. v Jones no. 15 cr. 95 ( AJN) 2020 u.s. dist lexis 91444 *5-6 (sdny) may 24, 2020) (granting compassionate release to defendant convicted of racketeering offense with underlying conduct including participation in an attempt murder on behalf of the gang , storing Guns for the gang, and selling marijuana in furtherance of the gang) United States v Pena no. 15 cr 551 (AJN) 2020 U.S. DIST LEXIS 85431 (sdny may8, 2020) (granting compassionate release to defendant who pled guilty to organizing a violent armed robbery)

U.S. v Hill no. 19 cr 00038 (JAM) 2020 u.s. dist lexis 87751 *8-9 (D. Conn may 19 2020) (granting compassionate release to defendant convicted of firearm offense, concluding "that the risk of harm to the community during" the period prior to his BOP calculated release date could be "addressed by requiring [defendant] to remain in home confinement and...subject him to

electronic monitoring by the US Probation office"). U.S. v Brickhouse no. 16 cr. 114 (VAB), 2020 US dist lexis 84987 * 12-13 (D. Conn may 14, 2020) (granting defendant with an "extensive criminal history" convicted of firearms and narcotics offenses compassionate release defendant had served accounting for good time credit" roughly half of his sentence, noting that the defendants minimal disciplinary infractions while incarcerated and demonstrated commitment to becoming a successful member of the community upon release" warrant release)

A common theme of these cases is that the defendant like Mr. Cook demonstrated a true commitment to rehabilitation during their time incarcerated Mr. Cook should be granted the same life saving relief.

### The New Calculus Continues to Warrant Mr. Cook's Release

Mr. Cook has never disputed his extensive criminal history nor the seriousness of his crime of conviction. However, Mr. Cook has served a substantial majority of his sentence. He has served enough time to punish, deter, and promote respect for the law. Restrictions can be imposed to ensure that he is not a danger to the community. When Mr. Cook was sentenced the court could not have foreseen the risk to him of severe illness or death posed by the global pandemic the new calculus continues to warrant release.

### Conclusion

This court should grant Mr. Cook's motion reduce Mr. Cook sentence to time served, modify the conditions of his supervised release as appropriate and order his immediate release from FCI Fort Dix to his approved address where he can quarantine and prevent himself and others from contracting covid-19.

Very truly yours,

Mr. John Cook